will hear United States v. Connors. Ms. McCarthy? Good morning. Good morning, Your Honor. This is Noreen McCarthy for Danielle Connors. Can you hear me okay? Yes. Yes. Thank you. The big question in this case is what rights did these agents have to handcuff Danielle, to shackle her to a wall, to detain her in an 8x8 interrogation room when she repeatedly said she wanted to go home, to isolate her from her only confidant, her father? What rights did these agents have to use Danielle's fear of her child's safety, her fear of losing custody, and her natural mother's protective love to extract a confession from her? The answer is they had no rights at all. The conduct of these agents caused a violation of Danielle's Fourth Amendment rights as well as two violations of Danielle's Fifth Amendment rights. These violations were deliberate and intentional with the sole purpose of extracting incriminating statements to be used against Danielle. First, the conduct caused a direct Fourth Amendment violation requiring suppression because there was no probable cause. Ms. McCarthy? Ms. McCarthy? Yes. The district court conducted an evidentiary hearing and heard from witnesses. It made detailed findings of fact, and in the end, it found that this was not coercive. How do you deal with that? Well, the problem with the district court's decision is that the district court applied the wrong standards. And in Brown v. Illinois, the Supreme Court said that when you have a Fourth Amendment violation, and in this case, we had a Fourth Amendment violation because there was no probable cause, and the court never considered that. The court specifically said that— Ms. McCarthy, the reason why it didn't consider it is because you didn't move to suppress on the Fourth Amendment violation. You're right. I moved to— Well, so how do you criticize Judge D'Agostino for not considering it when you didn't raise it? You waived it. Well, so the issue is not necessarily that it was a Fourth Amendment violation, however, it was a per se Fourth Amendment violation, which makes it a per se Fifth Amendment violation. What the court refused to do was to consider any of the circumstances pre-Miranda. And we certainly argued those. And in fact, I believe that our suppression motion was 120 pages with the attachments, including all of the circumstances, including the handcuffs, including the shackles. All of that came out of the suppression hearing. That is what the court specifically refused to consider, anything pre-Miranda. She said, anything pre-Miranda, I am not going to consider. That was her specific statement. In your 120 pages that you braved, did you argue that the arrest was unlawful? I argued all of the conditions leading up to her statement, including all of those, the handcuffs, the shackles, all of that. Did you argue that the arrest was unlawful? I do not believe that I actually said that. However, I did say that at trial. At trial, I specifically wanted to argue that the arrest and the detention were unlawful. I raised that, and the government objected. And that's when the court refused to let me make that argument at closing argument. So that actually was raised during court. I remember I specifically said that we most definitely were contending that the court- Is it timely? Is it timely if it's raised for the first time when you raised it? But I don't think that the issue is necessarily just whether or not it was an unlawful arrest. You still have to consider all of the circumstances, and that is what the court refused to do. That is the problem with Brown. Brown says you must consider all of those circumstances, and the court specifically refused to consider all of those circumstances. That's the problem here, whether or not there was actually a violation of the Fourth Amendment, which we contend that there was. And moreover, this should be considered de novo. So this court can consider whether or not there was a Fourth Amendment violation, whether or not it was raised. It is definitely a de novo issue. De novo has to- Doesn't de novo have to do with whether we hear the- It means it's legal and we have to decide it for ourselves, but that doesn't mean it can't be waived just because we can hear a de novo. It's not another way of saying that we can ignore a waiver or a forfeiture. Well, I went to this also, I went back and looked at the suppression motion, and I most definitely did argue that there was no probable cause without her statement. I argued that in the context of that the whole thing should be dismissed, that there was no probable cause without her statement, that the agents had no probable cause. When did you make that- I'm sorry, when you're quoting yourself, I'm just curious, when was it that you made that comment? That was in the suppression motion that we filed. Okay, thank you. Anything else? You can save the time for rebuttal. Yes, no, I just want to go through why I believe that there was no probable cause here, if the court would like to hear that. You're welcome to use the time in any way you like. You still have a couple of minutes on your main argument. All right, thank you. First, what the agents objectively knew was that Danielle traveled with Kyle Touchstone to visit someone in Brazil, but they also knew that Chyna was supposed to help her with her divorce papers. That was in the recording. They knew that Kyle had talked to DeFilippo about Chyna supplying a new connect, but they also knew that Danielle had nothing to do with that, because Kyle specifically said to DeFilippo, Danielle had nothing to do with that. They knew there was an investor, but they also knew that Sarah Pepin, Melissa's sister, had been investing and funding that organization in the very same way that was recorded, that is, taking money out of the ATM over the course of two days. And they also knew that Danielle would never give money to Kyle if she knew that it was going to be used for drugs. They knew that from the conversation with DeFilippo. They knew also that Kyle was staying at Danielle's house, but they also knew that she was helping Kyle detox. I would suggest that all of these exculpatory explanations were left out of the search warrant, and you'll see in the search that they were rejected. You have one minute. Okay, thank you. We also believe that this was a Fifth Amendment violation under Linum and under Maloy versus Hogan, when the district court actually found that the agents improperly used Danielle's child to get a confession out of Danielle, but said that that was simply inadvisable. The Supreme Court in Maloy says that's reversible error. The Supreme Court in Linum says that's reversible error. The Ninth Circuit followed suit even post-Miranda said that's reversible error because a mother will always say something when the safety of her child is at stake, and those statements are not reliable. I would suggest and submit to the court that this is time-honored rule, that even King Solomon knew that a mother's statement is not reliable. Under each of those, under the direct Fifth Amendment, the direct Fourth Amendment, and the implied Fifth or the Fifth Amendment through the Fourth Amendment, each one of those are grounds for reversible error in this case, and the statement should have been suppressed. We ask you. Thank you, Your Honor. Thank you. You have some time for rebuttal. We'll hear from the government. May it please the court. Karina Schoenberger for the United States. Connors' conviction here should be affirmed. First, the district court properly denied her suppression motion. Can I ask you, before you go further, just as a matter of information, whether you were involved in the trial of this action? I was not, Your Honor. Thank you. Go ahead. Yes, so first that the district court properly denied Ms. Connors' suppression motion, and second that Connors hasn't identified any errors that deprived her of a fair trial. With respect to the suppression motion, Connors certainly waived the Fourth Amendment argument that she's making here. At no point did she move to suppress her interview statement based on the lawfulness of her arrest. It wasn't a timely motion made to the extent that it was raised at trial. Counsel is correct that there was an argument during summations that she should be allowed to argue that it was unlawful arrest, but that was not any in the context of moving to suppress her interview statement. And the references to probable cause that do appear in her suppression motion are not directed to suppressing the statements that she made during her interview. Rather, there's a separate motion to suppress evidence that was obtained through a later search warrant of Ms. Connors' telephone and her cellular telephone. And the argument there was that the probable cause in that search warrant was based on the statement that Connors had made in her interview. And without those statements, there wouldn't have been probable cause to search her phone. So again, not asking the court to suppress the statements that she made during her interview. Even to the extent that this court were to reach the merits of the question, the record does reflect probable cause to arrest Connors at the time that she was detained in question. The search warrant to search Ms. Connors' person, her vehicle, and her residence contained facts showing that she was knowingly conspiring with Touchstone and Kousalonis. And those facts included that she was identified as an investor who would provide money to buy heroin, that she had participated in a meeting with Touchstone with a new heroin supplier, and also that she had loaned her car to her co-conspirators to transport heroin. The Fifth Amendment argument that Connors makes on appeal was thoroughly addressed in the district court. The totality of the circumstances show that her will was not overborne during the time that she was interviewed. She was given Miranda warnings and voluntarily made incriminating statements thereafter. Turning to the errors that were identified as occurring at trial, I'll begin with the cross-examination of Ms. Connors' character. Witnesses, the district court permitted the government to ask questions regarding certain specific instances of bad conduct, including ordering a lockpick. How about the other one, though? That's the more troublesome one to me, where they ask the character witness whether the recitation of what she was on trial for. In other words, did you know as a fact? And then states in the question exactly what this trial was all about, that Connors admitted to giving Touchstone and Cusalona $700 to buy heroin. It doesn't strike me as appropriate, at least unless you explain it otherwise, appropriate to have done that. I suppose the question then would be, if my suggestion is right, I suppose the question is then whether it's harmless. But the question is, was it error in the first place? It's a close call because certainly the questions are in relation to the facts that are being proved at trial. But the government was careful to phrase its questions in terms of what Connors had stated during her interview, what she had stated she had done. So although they were facts going to show her participation in the drug conspiracy, they weren't assuming her guilt as to the conspiracy. And the questions alone didn't show that she was conspiring to deal drugs or that the witness had to accept that fact, but rather were asking about statements that Connors had made. There was one question in there that was not phrased in that way, and the witnesses were asked whether they knew that Connors had loaned her car for the purpose of picking up drugs. And it could have been phrased more artfully, but again, loaning her car didn't necessarily require showing guilt that she was conspiring to distribute drugs. But to the extent that the court finds that the district court was wrong and that those questions did cross over a line, the cross-examination was harmless for four reasons. First, the witnesses all emphatically denied the questions that the government asked on redirect. They stated that any of those participation in those specific instances or that the statements that she made during her interview would have been totally out of her character. Secondly, the jury was instructed that only the answers witnesses give are evidence, not the questions asked by the attorneys. Third, there was otherwise strong evidence against Connors here. Four different witnesses testified as to her participation in the drug conspiracy. That testimony was corroborated by other evidence, and of course, the government showed the jury the admissions that the defendant made during her video recorded interview. And then finally, the government didn't make any reference to the testimony of these character witnesses in summation or otherwise try to make use of any of the responses that the witnesses gave. So even if the court were to find that these questions were somehow improper, the error there was harmless and not basis for reversal. Connors also challenged the jury instruction about what weight the jury could give to her confession, and the district court gave a legally proper instruction. The instruction that Connors requested was not in accordance with the law, and so she can't show that there was an error there. With respect to the challenge to the statement made in the government's rebuttal, the government was trying to counter any sort of suggestion that the jury had to disregard the confession if they found it was coerced to the extent that the jury could have interpreted what the government was saying as that they could not disregard the confession, which of course was within its province to do, then that misinterpretation would have been cured by the judge's instruction, which was correct, and the judge's instruction also that... How long was the trial? I believe it was a week. A week. And what was the eventual sentence of the defendant? She received a time served sentence. It was seven days. Okay. Any supervised release? Yes, three years of supervised release. The final error that Connors raises relates to the testimony given by the cooperating witnesses, as is detailed in the government's brief. Connors has not shown that any of the testimony that was given was false and so cannot show, of course, that the government knew or should have known that the testimony was false. All of her theories with respect to why that testimony was wrong or should be interpreted differently were arguments that were made at trial to the jury and don't support any sort of finding that the witnesses testified falsely. Unless I can answer any additional questions, I thank the court for taking our argument. Thank you. Thank you. We'll hear the rebuttal. Ms. McCarthy. Thank you, Your Honor. I want to, again, address the issue of the preservation of the Fourth Amendment. We certainly argued that it should be suppressed. And under Rule 51B, there are two ways to preserve that. Either the relief spot, which in this case was suppression on the grounds that the statement was involuntary, or two, a very specific instruction. The Supreme Court on February 26th just ruled in Hogan-Hernandez v. United States that all you had to do was tell the court what action you wanted. And in this case, the action we wanted was for the statement to be suppressed. So asking to suppress the statement based on the Fifth Amendment raises the involuntariness, and that's what you're arguing. But asking to suppress it based on lack of probable cause because there's no legal rest genders in a completely different analysis, because all one needs to do is, if you show the arrest is no good, then whether the statement is voluntary or involuntary, the statement's out, right? Well, that's right, Your Honor. But we are arguing. Right, but you were arguing involuntary. You weren't arguing. You didn't argue. Well, we'll look at it, but it's clear to me you did not argue to suppress on Fourth Amendment grounds in your 120 pages of suppression. Correct. Go ahead. We did argue that it was a Fifth Amendment violation, and our argument- I understand what you're arguing. Right, and our argument still is that it's a Fifth Amendment violation that was involuntary because of the pre-Miranda circumstances, which, in this case, rose to the level of being a false arrest, an arrest without probable cause. Yes. Okay. You do realize that if it's an arrest without probable cause, whether it's voluntary or not, it doesn't matter, right? I do, unless the government- Okay. Okay. Ms. McCarthy, Ms. McCarthy, why don't you finish up? Okay, thank you very much. Well, in terms of the cross-examination was outrageously egregious of these witnesses. The defendant was only allowed to call these three witnesses. He had two character witnesses. That was it. Her character was central to this case. Her veracity was central to this case. Prior to those witnesses taking the stand, she was undecided about whether she was testified. Based on the cross-examination, which was disastrous for her, she refused to testify after that. As far as this being harmless, it's impossible to believe that that would be harmless. The jury was heading off to the jury box, and the prosecutor had just, without really corroborating evidence and without any gatekeeping by the court, with his suggested questions, demonstrated that she was a liar and a thief. And then they went off to deliberate. These were disastrous questions in every case. He was wrong on every single question. None of them should have been asked. And when those witnesses first off said we had no knowledge of Kyle Touchstone, he needed to stop. This wasn't just one question. It was over and over and over. It was so completely out of control that it was absolutely harmless. I mean, absolutely devastating for her. All right. Thank you. We have your argument. The court will reserve decision.